UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:  Chapter 13

Henry Caldwell, III,  Case No. 18-32346-jda

               Debtor.  Hon. Joel D. Applebaum
_____/

**OPINION DENYING DEBTOR'S MOTION FOR DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY AND CIVIL CONTEMPT FOR VIOLATION OF TURNOVER ORDER**

Before the Court is the motion of the Debtor, Henry Caldwell, III ("Debtor"), seeking damages against Donald Sampson ("Sampson") under 11 U.S.C. § 362(k)(1) for willfully violating the automatic stay and civil contempt sanctions for allegedly violating this Court's prior Order for Turnover [Dkt. No. 55][1]. For the reasons set forth below, the Court DENIES Debtor's Motion for Damages.

**Jurisdiction**

This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O); *Amedisys, Inc. v. Nat'l Century Fin. Enterprises, Inc.* (*In re Nat'l Century Fin. Enterprises, Inc.*), 423 F.3d 567, 573 (6th Cir. 2005), over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334. An order awarding or denying damages under § 362(k)(1) of the Bankruptcy Code is a final order. *See In re Webb*, 2012 WL 2329051, at *5 (6th Cir. BAP Apr. 9, 2012).

---

[1] The Order in question was entered by the Honorable Daniel S. Opperman prior to this case being reassigned on June 5, 2019.

## Factual Background

Prior to his chapter 13 bankruptcy filing on October 5, 2018, a judgment in the amount of $30,930.68 was entered against Debtor in favor of Sampson by the Genesee County Circuit Court. On March 23, 2017, the Genesee County Circuit Court entered an Order to Seize Property (the "Seizure Order"). Pursuant to the Seizure Order, the Court Officer, C.L. Heide, seized one GMC truck and four semi-trailers. These vehicles were sold prior to the petition date and the proceeds used to partially satisfy Sampson's judgment. Thereafter, in September 2018, Court Officer Heide located and seized a 1998 Freightliner semi-truck (the "Freightliner") with attached trailer and drove them to a storage lot owned and operated by Harry Powell ("Powell").

Following his bankruptcy filing, Debtor made several unsuccessful attempts to retrieve the Freightliner from Powell's yard. On February 6, 2019, the Court entered its Order for Turnover of Debtor's 1998 Freightliner and for Sanctions against Donald Sampson [Dkt. No. 55], requiring the return of the Freightliner by February 8, 2019. The Order further provided that Debtor "may file a motion holding creditor [Sampson] in contempt of court" if the Freightliner was not returned by that date. The Court reserved the issue of sanctions against Sampson for a further hearing to be held in March 2019. The Freightliner was not returned by February 8, 2019 as ordered. On February 19, 2019, Debtor filed a Motion for Contempt against Sampson, and on February 25, 2019, Debtor filed a Motion for Contempt against Powell. On February 26, 2019, the Court held a status conference which resulted in this Court issuing its Order to Release Property and Setting Show Cause Hearing. [Dkt. No. 64] For the first time in this case, this Order included a reference to Powell, requiring both Sampson and Powell (or anyone acting in concert with them or on their behalf) to release Debtor's property no later than March 1, 2019. In compliance with this Order, the Freightliner was moved from Powell's lot to the side of the road where, after considerable

effort, it was retrieved by Debtor. The Motions for Contempt against Powell and Sampson were resolved by the Order to Release Property [Dkt. No. 64] and compliance therewith, leaving open only the issue of damages and/or sanctions.

On May 1, 2019, Debtor filed his Motion for Damages For Creditor Misconduct [Dkt. No. 78], seeking damages against Sampson *only* for violating the automatic stay and civil contempt sanctions for allegedly violating the February 6, 2019 Order for Turnover. Because of adjournments requested by the parties, a hearing on Debtor's Motion for Damages was not held until August 7, 2019, at which time the Court scheduled an evidentiary hearing for September 16, 2019 and allowed the parties limited discovery. At the parties' request, the evidentiary hearing was further adjourned to October 21, 2019.

At the inception of the October 21st evidentiary hearing, Debtor's counsel again reiterated that Debtor was seeking monetary damages from the judgment creditor Sampson only for *his* repeated violations of the automatic stay, and civil contempt sanctions for *his* willful violation of the February 6, 2019 Order for Turnover. A total of 6 witnesses testified at the hearing, including Debtor; Sampson; Powell; and Martin Burnash, owner and General Manager of Burnash Wrecking Inc. A total of 29 exhibits were admitted, all without objection.

**Legal Analysis**

A.  Damages for Violations of the Automatic Stay

"An individual seeking damages for a violation of the stay has the burden of establishing three elements by a preponderance of the evidence: (1) the actions taken were in violation of the automatic stay; (2) the violation was willful; and (3) the violation caused actual damages." *Collette v. Lee Oil Co., Inc. (In re Collett)*, 2014 WL 2111309 (BAP 6th Cir. May 21, 2014). For the reasons discussed below, the Court finds that Debtor has failed to carry his burden of establishing

the first element and, therefore, is unable to establish an entitlement to damages from Sampson under § 362(k) of the Bankruptcy Code.

Prior to the bankruptcy filing in this case, Sampson obtained a judgment against Debtor and undertook efforts to collect on that judgment. To that end, Sampson obtained an order of the Genesee County Circuit Court allowing the Court Officer to seize assets of Debtor which were then sold. The proceeds of that sale were used to partially satisfy Sampson's judgment. Also, pre-petition, the Court Officer seized the Freightliner at issue here and placed it at Powell's lot. Nothing in the record establishes that Sampson (as opposed to Powell) undertook any act post-petition with respect to the Freightliner, the only vehicle at issue in Debtor's Motion for Damages, let alone any act remotely resembling a violation of the automatic stay. Both Sampson and Powell testified that Sampson never told Powell not to return the Freightliner to Debtor. Rather, Sampson testified that once the Freightliner was seized by the Court Officer, he believed he was "out of it."[2] Sampson's testimony on this point was corroborated by both Debtor and Burnash. Debtor testified that all efforts to retrieve the Freightliner -- his own, Martin Burnash's and those employed by Burnash -- were directed at Powell only. Burnash also testified that he sent his employees out to Powell's yard on at least 4 occasions, and each time Powell either refused to release the truck or otherwise interfered with the retrieval of the Freightliner. Although Powell strenuously disputed this testimony, the only stay violations alleged to have occurred were committed by Powell, who allegedly refused to release the Freightliner unless he was paid outstanding storage fees.

---

[2] Several courts have held that passively refusing to return a vehicle, thereby denying a debtor its beneficial use, is an act that constitutes a stay violation. *See e.g., In re Fulton*, 926 F.3d 916, 923 (7th Cir. 2019) (passively holding an asset notwithstanding demand for return satisfied Bankruptcy Code's definition of exercising control). *But see, In re Denby-Peterson*, ___ F.3d. ___; 2019 WL 5538570 (3d. Cir. October 28, 2019). No evidence was introduced at the hearing to indicate that Sampson had possession, custody or control over the Freightliner. As a result, Sampson was not in a position to refuse to return the truck.

In light of the complete absence of any evidence that Sampson, as opposed to Powell or others, violated the automatic stay, Debtor is not entitled to actual or punitive damages against Sampson under § 362(k) of the Bankruptcy Code.

B.  Sanctions for Civil Contempt

In addition to damages under § 362(k) of the Bankruptcy Code, Debtor also seeks civil contempt sanctions for Sampson's alleged violation of the Court's February 6, 2019 Order for Turnover [Dkt. No. 55].

In *Taggert v. Lorenzen*, ___ U.S.___; 139 S.Ct. 1795 (2019), the Supreme Court announced the appropriate standard to be applied in determining whether to hold a creditor in civil contempt for violating a discharge order. The Supreme Court rejected the 'strict liability' test that is synonymous with the test used to determine damages for automatic stay violations. Instead, the Supreme Court held that bankruptcy statutes incorporate traditional standards in equity practice for determining when a party may be held in civil contempt for violating an injunction. Under these traditional standards, civil contempt "should not be resorted to where there is [a] *fair ground of doubt* as to the wrongfulness of the defendant's conduct." *Id*. at 1801-1802 (internal citation omitted, emphasis in original). Stated another way, a bankruptcy court is authorized to impose civil contempt sanctions only "when there is *no objectively reasonable basis for concluding that the creditor's conduct might be lawful* under the discharge order." *Id*. at 1801 (emphasis added).

According to the Supreme Court, "this standard reflects the fact that civil contempt is a 'severe remedy,' and that principles of 'basic fairness require[e] that those enjoined receive explicit notice' of 'what conduct is outlawed' before being held in civil contempt." *Id*. at 1802 (internal citations omitted). In light of these principles, this Court cannot discern any reason why

- 5 -

18-32346-jda    Doc 120    Filed 10/30/19    Entered 10/30/19 14:14:32    Page 5 of 6

the *Taggert* standard should not apply equally to Debtor's request for civil contempt sanctions for Sampson's alleged violations of this Court's turnover order.[3]

In this case, Sampson testified that, once the Freightliner was delivered to Powell's lot for storage pending a sale, Sampson no longer had any control over the Freightliner, and he was "out of it." Both Sampson and Powell testified that Sampson never instructed Powell to withhold the Freightliner from Debtor, nor did Sampson otherwise interfere with Debtor's efforts to wrest possession of the Freightliner from Powell. In light of this unrebutted testimony, Debtor cannot demonstrate that Sampson's conduct was objectively unreasonable under the turnover order.

## Conclusion

For the forgoing reasons, the Court finds that Sampson did not violate the automatic stay, nor did he contemptuously violate the Court's turnover order. Debtor's Motion for Damages is, therefore, DENIED.

**Signed on October 30, 2019**

/s/ Joel D. Applebaum
Joel D. Applebaum
United States Bankruptcy Judge

---

[3] In *Taggert*, the Supreme Court explicitly left open the question whether its newly announced standard applies to violations of the automatic stay. Since June 2019, when *Taggert* was decided, at least two courts have held that *Taggert* did not alter the applicable standard to be used in considering violations of the automatic stay. *In re Spiech Farms, LLC*, 603 B.R. 395 (Bankr. W.D. Mich. 2019); *Calif. Coast Univ. v. Aleckna*, 2019 WL 4072405 (M.D. Pa. 2019).